Thank you, Your Honor. Our last case this morning is number 21-13616, Carl Murdock v. Wanda Robinson et al. Ms. Walker? Constance Walker, Jr. Good morning. May it please the Court. Good morning. My name is Constance Walker, and I represent the appellants, Wanda Robinson, who was the Montgomery County Jail, and Barbara Palmer, who was the Assistant Director. I'm just going to get right to the point. We have appealed because the Court entered an order denying our motion for summary judgment, and as a result of that, my clients lost on their defense of qualified immunity. What happened is the parties, we briefed the issue, we submitted our briefs on summary judgment, and at that time, there was a shortage of judges in the Middle District of Alabama, and we actually had a judge from Miami that was overseeing this case. And so, we waited for the judge to rule on our summary judgment. We ended up waiting for three years. The case just sat there. Then we got a new judge, and rightfully so, he got right on it, and he scheduled a hearing. We argued the summary judgment, and during that hearing, the judge asked me, defense counsel, a question, and it was just a spur-of-the-moment question. It had to do with grievances and inmate request forms, which really were not even central to the underlying claims. And I answered the question, and unfortunately, my answer was contrary to the evidence in the record, which I didn't know at the time. However, it's been three years since we briefed the case, and it was an issue that was not germane to the arguments we had previously made, but still. Okay. Let's see if we can peel some of the layers back, because this record is very factually complex. Uh-huh. So let me see if I can get you to agree on something, and if not, we have to go back to square one. Okay. I'm going to give you a hypothetical, okay? So this is not the record in this case, necessarily. If he, if Mr. Murdoch had submitted a grievance form, handed it directly to Ms. Robinson and to Ms. Palmer, saying, I have been here for three weeks, no one will take me to go see a judicial officer, please get me a court hearing, this warrant was a mistake, I need to go to court, and they had done nothing, would there, number one, be a plausible claim for a constitutional violation? And number two, would they be denied qualified immunity? Yes and yes. Yes. Okay. So it all, so this case turns on whether or not, as you put it, the issue about the grievance forms was properly presented in the district court, and then whether the record shows or allows a reasonable inference that Ms. Robinson and or Ms. Palmer received such grievance forms from Mr. Murdoch. Am I right about that? I think that's correct. Yes, sir. Okay. All right. Fire away then. All right. But didn't Mr. Murdoch in his deposition testify that he had, one, requested multiple grievance forms, and then he did fill out two grievance forms, one that your client has no record of receiving, and then the second one that was not a grievance form, but it was a form that went to, and I don't remember what the actual term of it is, that went to the court. So there's two different kinds of forms. There's like a grievance form and then a form that goes to the court. Right. And there's an inmate request form. That's just a general form. So he testified that he asked multiple people, multiple times, multiple days for forms. He also asked for the control room to give him forms because according to the testimony that various people gave, you could also get your forms from the control room, and he was ignored. I mean, this is all his testimony. That's correct. That's correct. However, it's very important to look at the claims that were asserted in the complaint. Count 1 was a deliberate indifference 14th Amendment due process claim trying to hold my supervisors liable for the actions of those guards who ignored Mr. Murdoch. It was basically a claim for responding at superior, which was not permissible under 1983. The other federal claim was a supervisory claim pursuant to 1983, trying to hold my officers liable for policies. I briefed those. On summary judgment, I showed that we did not have the requisite culpable state of mind which is necessary for deliberate indifference because we had no knowledge of Mr. Murdoch's plight or his situation. And I also briefed the issue about responding at superior. We're not liable for what those officers did to Mr. Murdoch. It was awful, but we're not liable for that under 1983. On count 4, I showed on summary judgment that we have policies in place. Their allegation is that we had reckless policies. That was the allegation in the complaint. I showed on summary judgment we have this, this, and this in place. What policies did you have in place? All right. We had a policy that once they were, a person is arrested, those forms, the warrant and the underlying documentation is hand-delivered to the circuit court the next day so the circuit court can come up with a list and set a hearing for each one of those officers. The other procedures that we had. Was that done? Yes. And we have proof of it. They received it the following day. He was arrested on the 19th. And what is supposed to happen after that is done? The court is supposed to set a hearing. There was a breakdown at the court, either in the circuit clerk's office or in Judge McCooey's office. I think it was in Judge McCooey's because she was out on vacation for a month that summer. But anyway, your question is what were the procedures? We had the grievance procedures. We had the inmate request forms. We had indigent PACs and they could buy correspondence and write people if they had a problem. We had telephone visitation. But it's clear that the policies didn't work because if you have an individual who's testified that he's requested forms and the forms are not provided to him or he also has testimony that he did a form and he put it in the box and it sat there for days and you don't have any record of receiving it, we have to take his testimony as viewing in a light most favorable to him, which is that means that that grievance form went somewhere and it disappeared, which means that your policies and practices don't work. I think the policies and practices did not work in this instance. But as I was saying, everything that we did, everything that we had in place passed constitutional muster previously in the Eleventh Circuit and I briefed that to the court. It also passed constitutional muster in this Armstrong case that I've talked about a lot in my brief as well. My point I was making is I submitted that on summary judgment and their response when they came back, they abandoned their claims in the complaint and argued a brand new theory that we were liable because we didn't obey this language in an arrest warrant that said take the person to court. It was actually a statement in the warrant that said arresting officers, law enforcement officers pick this person up and take him to court. So here we are. They have abandoned their original claims and argued something new. And so my argument then was they've abandoned it, I'm entitled to summary judgment. So we go into this hearing, the judge asked me a question about grievances and inmate request forms, which aren't even issues in the underlying summary judgment. I make a response that's not correct. I said they would have gone to the attention of my clients when actually my client had And they're sorted and anybody can answer a request about a hearing, clerical, sergeant, lieutenant. They pick up the phone and call the court. So my representation was not correct, my fault. But please know it was not a binding judicial admission. It was in response to a spontaneous question and it's against the evidence. And then we get an order that's denying my clients qualified immunity based upon my statement and upon a new theory of liability that was never alleged in the complaint, never argued at summary judgment. And so my clients were stripped of qualified immunity based upon this new argument that I never even had the chance to brief before the district court. If the breakdown is completely at, as you put it, at the court and not at the jail, and someone like Mr. Murdoch is there for four months, five months, six months, without seeing a judicial officer, nobody at the jail has any constitutional responsibility to move? Of course not. And I told the court. So at what point does someone have, someone, I'm not saying your clients, does someone have a constitutional responsibility, if at all, to do something? I told the court, the plaintiffs, he should have sued those corrections officers. I'll be the first one in line to admit they were wrong. What happened to him was awful. But they did not sue them. They sued my supervisors, supervisory claims. And that was a problem because they had a difficult burden, a much harder burden. But they were in charge of the county jail, were they not? Charge of what, I'm sorry? The county jail. Correct. They were. And they implemented policies to handle this. Implemented policies that didn't work because you can send in names to the court and the clerk's office, I guess, at the court. But if you don't have any track, like I don't even understand in what world you have a system in place that's not even computerized. There's not even anything to be able to say, this person has submitted a form and we've addressed it. You know, we have A, B, C, D, E in jail today. Did you make sure that they got their hearing? There's nothing in place. It's literally, I'm, you know, Pontius Pilate, I'm washing my hands and let's see what happens of it. That's what they argued. But as I said- That's what happened. It's not what they argued, that's what happened. They washed their hands. And Mr. Murdoch sat in jail for 48 days. I would like to say- 48 days. And you're complaining that you didn't get a hearing, a summary judgment hearing. I'm not complaining I didn't get a summary judgment hearing. That you sat there, you stood there and you complained that you didn't get a summary judgment hearing for three years. No, what I'm complaining about, Your Honor, is that the court ruled against my clients based upon an argument that I never even had the chance to brief. I don't think that's- Counsel, you know what's wrong with that argument? What's our standard of review? You construe the- The answer is de novo, which means we have brand new review as though the district court never ruled, right? You've had plenty of opportunity to debrief it and argue it now. So procedural defects in the district court leading to summary judgment really are beside the point. Any argument you didn't have the opportunity to make in the district court, you've had abundant opportunity to brief and now orally argue to us, haven't you? Yes, sir. So, if we're faithful to the de novo standard of review, no harm, no foul. I understand that. Correct? Yes, sir. But there's also case law that says- Let me ask you another question. Let me ask you another question before we go too far and I didn't mean to cut you off. But the corrections officers should have been sued. Which corrections officers for what? The corrections officers that Mr. Murdoch said he asked for forms and complained to and who ignored him. Those officers violated his rights. And those are usually, if you look at the case law, those are usually the people that are sued in these cases that talk about prolonged detention. And I would like to just finish with this one point here, Honor. In addition to follow up on that, he sued, you said he didn't sue those corrections officers, but he sued others besides your two clients, right? He sued, no, not at the county jail except for my sheriff. No, no, no, no, no. In this lawsuit, he sued people other than your two clients, right? He sued some people from the city who arrested him, yes. And who else? He also sued the chief deputy for Montgomery County who was let out on some- Chief deputy of the prison system or the support- No, he wasn't involved at the prison. And he sued the city officers who were involved in the arrest. I think that's all. Okay. But I would like just to clear up a point. The policies that we have in place were tried and true and worked. This is the only time this has ever happened, all right? And I cited the case law to the court where the exact same thing that we had, not computerized, this happened in 2014, it wasn't computerized, no it wasn't, but the exact same thing that we had passed constitutional muster in the 11th Circuit in West v. Tillman, or is it Tillman v. West? I can't recall. And it also passed constitutional muster in that Armstrong v. Squadrito case, which is the 7th Circuit case that a lot of these cases also point to in sight. So that was my argument on summary judgment. Their duty was to come back and show that those policies were deficient and show a pattern and all kinds of, a pattern of unconstitutional violations that had happened in the past to put us on notice that our policies were deficient. That was the original claim in the complaint. They did not meet that. They did not meet that. So I was due summary judgment on that, and I think, and I know this is an awful thing that happened to Mr. Murdoch, I don't want to make light of that. I think the court was very curious about what's going on over there. I think there was probably some sympathy, and I understand that. But you don't let a plaintiff change their theories once and then twice again. Should we hold them to their original theories in the complaint that I briefed on summary with this new theory that came up at the hearing that the court relied on? And don't forget that the court, the basis of the court's denial of summary judgment is my statement in response to a question, a spontaneous statement that was not a judicial binding admission at all, but that's the basis for his order against my clients. I don't think that's right. I don't mean to be complaining. Counsel, counsel, here's the problem with your position about that, and I'm somewhat sympathetic, but if you have a hearing in trial court, district court in our case, and the district court says, okay, now tell me why we're here, and the counsel for the defendants or the plaintiffs gets up and says, well, judge, there are three issues that the pleadings define, and I want to make clear that my clients are no longer contesting issue one. So don't let that slow you down. We don't want to distract from everything. The whole case turns on issues two and three. That's why we're here. The district court takes you at your word and decides issue two and three against you, enters judgment, and then you come up to us and say, that's not really in the record. That's not a binding concession. That's no way to run a judicial system. But that's not what happened here. I didn't get up and represent to the court A, B, and C, and here's what's left. That would be binding. What happened here is- No, yeah. Actually, you did. I mean, the issue was, if the form went to Robinson, I believe it was, if the form was handed and went to Robinson, would it have been delivered to her? Would she have been responsible for it? And you said certainly. Did you not? No. The answer, here was the question, how does this get on the radar of a supervisor, what happened to Mr. Murdoch? And I said, this was a question I was not expecting. I hadn't had time to look at the record in brief. Here's what I said. I said, Judge, if that form had said, I am not getting my 72-hour hearing, which is the initial appearance. I think- Right. I'm certain that would have gone to the attention of the director or at least the assistant director. Right. But the distinction is, this was not something that I researched and came to court and said, Judge, here are the two issues left in the case. Number three is not in the case anymore. This was a response that made- Well, why didn't you then say, Judge, I don't know, I haven't had time to think about that? I should have, but I did not. And that's my fault. That is my fault. See, I don't understand. And suppose you've said something or opposing counsel says something today that we think is material and even decisive. You're telling us that we can't rely on that in issuing an opinion because the attorney who said it may not have had time to think about it and wasn't prepared for it. No, I'm not saying that. I think you can rely on it, but- Well, what's the difference? But- What is the difference, counsel? The difference, in my opinion, Your Honor, is that what I said is actually contrary to the record evidence before this court and before the district court, is that it would not have gone to her attention. It would have gone to booking where it could have been handled by clerical, sergeant, lieutenant, anybody by picking up the phone. Well, I mean, one- So anything that- Go ahead. I'm sorry. No, no, it's okay. You can finish up, Judge Cardins. So anything that you or opposing counsel says today, we can't take it on face value. We can't trust that. We've got to go check it against the record if it's detrimental to your case. I don't agree with that, what you just said. I don't agree with that. But I think if you look at what happened here, it was an unusual situation because he asked a question that was not germane or central to the claims that were briefed on summary judgment because the filing of a grievance and an inmate request form and my client's receipt of them was not an issue in the claims that were made in the complaint. The judge was just asking us questions because, in my opinion, he was curious about what goes on over there. Now, after you, maybe as a sort of suggestion about how this sort of thing might be handled in the future, you get the district court's order, right? And you see that the district court relies on your statement at the hearing, which you say was incorrect and contrary to the record. Did you then tell the district judge, listen, you based your ruling on something that was incorrect. We made a mistake. The record completely contradicts the assertion that was, or the answer that was provided at the summary judgment hearing. Please reconsider your order. We did not file a reconsideration. I'm not saying that's necessary, but that certainly would have been helpful, right? Because I think what Judge Carnes is saying is lawyers, I mean, judges rely on what lawyers tell them a lot. And if a lawyer makes a representation and the judge hears nothing else about whether that representation is accurate or not, they take it as a given and they move on. Sometimes it's taken as a concession that really provides a pivotal move in the case. I agree. And I think what makes this case distinguishable is the fact that he took my statement and he reworked their claims and came up with a new theory of liability. That's not I understand that part of the argument, too. My point was only about how you might want to tell a district court judge that he's misunderstood something that was said and represented. Right. And I understand. And I appreciate your insight on that. But I think what makes this case different is that he changed the theory of liability after we briefed everything. Okay. We'll give you a chance to talk again after we hear from your opposing counsel. Thank you. All right. Thank you very much, Ms. Walker. Ms. Agricola. So how are you two going to split this up? Who's arguing what? Yes, Your Honor. My father is going to be arguing the qualified immunity issue and I will be arguing the jurisdictional issue. What jurisdictional issue? Well, let me tell you. May it please the Court, my name is Barbara Agricola and together with my father, Al Agricola, we represent the plaintiff, Carl Murdoch, in this case. We're asking that the Court dismiss the appeal. This Court lacks appellate jurisdiction for one principle and one principle alone. The defendants fail to present any question of law related to a core qualified immunity legal issue. But is it — I mean, I know the cases you're talking about and they do say that if they're — if what you're trying to litigate in an interlocutory qualified immunity appeal are the facts, then the appellate court doesn't have jurisdiction. Correct. Correct. But in almost all of these summary judgment cases, we accept the facts in the light most favorable to the plaintiff and then decide whether, one, a constitutional violation has been made out, viewing the facts in the light most favorable to the non-moving party, and using that same standard, whether or not there's a violation of clearly established law. Correct. So why don't we do that in this case? Take the facts in the light most favorable to Mr. Murdoch and decide those two questions. Well, Judge, the important — the defendants are attempting to persuade the Court that there's an appellate — that there's appellate jurisdiction based on the false assertion, as you've heard, that plaintiff presented new issues at summary judgment, which is false. No. No. Counsel. Counsel. That's not that. They're arguing that even if you take that there wasn't a constitutional violation or there's an issue over qualified immunity, let me tell you, I don't want to add an addendum to Judge Jordan's question and attribute it to him, but I'll just tell you this. You're wasting your time on the jurisdictional issue. If you want to waste it, that is fine, but you've got some points I think you ought to be arguing about the facts and the application of law to facts here other than jurisdiction. So, for example, one of the arguments that Ms. Walker has raised is that the theory of liability against Ms. Robinson and Ms. Walker shifted between the filing of the complaint and the summary judgment briefing and the summary judgment hearing. She says, and I haven't gone back to look at the record in this detail, so I don't know, but she says that the claims pled against her clients were essentially on two theories, respondeat superior and a species of supervisory liability. And at the summary judgment hearing, it shifted, she says, to whether or not they were given or received copies of grievance forms submitted by Mr. Murdoch. So I'd like to hear the response on that. Yes, Your Honor. She makes two arguments that we presented new arguments at summary judgment phase improperly in an effort to improperly amend the complaint. This is false. Let me tell you why. First, her first argument is that the language which was in the briefing, so her first argument was based on what was argued in the briefing, the summary judgment briefing, and then her second point was based on what was the result of the oral argument three years later. So based on the first argument of the language in the briefing, that's merely, that's simply false. The, she cites that the support where we, we focus the court's attention to the language in the warrant where it tells the law enforcement officer to bring the arrestee before a court. She says that's a new issue first presented at summary judgment, which is just completely factually inaccurate. For example, in the amended complaint, paragraphs 21 through 25, I go extensively through the Alabama Rules of Criminal Procedure that were violated by the failure to follow the verbiage of the warrant language. Now, I didn't reference. Violated by whom? Well, all of the defendants, depending on the various claims. There were multiple claims with multiple defendants. Okay, so how did, okay, let's start back at square one. According to your complaint and your theory of the case, how did Ms. Robinson and Ms. Palmer violate Mr. Murdoch's rights? According to the complaint. Yes, Judge. In count one, that was the deliberate indifference claim. The law, and of course this is the issue that my father's going to be arguing additionally, but the law on deliberate indifference, they have to be policies in place or there's a, I'm sorry, there's a constitutional right that is clearly established that the actors, here defendants Ms. Robinson as well as Ms. Palmer, their actions or inactions, their alleged actions or inactions violated that right. That's based on Johnson v. Jones. Which actions or inactions? Well, multiple actions. Okay, tell me one. The district court cited several as a reason, as a basis for denial of the grant of summary judgment on the basis of qualified immunity. The district court cited not only her concession-made oral argument, which we can only, you know, like Judge Karnes referenced, if we're in a position where you can't trust what we're saying in court, then we're in a situation that is just not really tenable under the law. But regardless of that, that wasn't the only, the only basis that the district court relied on in order to rule against the defendants on summary judgment. What else, what else did the record show that Ms. Robinson and Ms. Palmer did or didn't do that violated Mr. Murdoch's rights, aside from potentially receiving grievances he filed and doing nothing about them? What else did they do that was constitutionally improper? They failed to follow their own policies and procedures, which required that should they have received a grievance, which was of an emergency nature, now there wasn't different types. That's the same, that's the same thing. They received grievances, they didn't act upon the grievance. That's the same thing. What else did they do wrong? Well, the district court also cited that the, based on the deposition testimony of Ms. Palmer as well as Ms. Robinson, that they both individually would walk the jail hallways and speak to inmates related specifically to grievances, as well as any issues that they had. So the district court cited that as a basis for a denial of qualified immunity based on their own deposition testimony, not a new argument submitted for the first time in summary judgment briefing, nor at oral argument. That was on the basis of the deposition testimony provided by the defendants, their own deposition testimony. Also based on those policies regarding the emergency grievance. And then, of course, based on the concession of counsel in oral argument, that if we take the facts as true from the plaintiff, since they're the nonmoving party on summary judgment, that if he stated that he submitted at least two grievance forms, one specifically addressed to Rhonda, to Mrs. Robinson, that reference that he had his quote-unquote situation, which the situation, as noted in a footnote in the district court's opinion, the situation was that he didn't receive any hearing, not a 72-hour hearing, not a, a formative counsel hearing. All right. Counsel, counsel. Counsel, stop right there. Don't tell me about what the district court thought the situation was. Tell me the exact language in that form that your client said should have put on notice the director and the assistant director and anybody else who read it, that he hadn't had an initial hearing show up, appearance, and he was requesting one. What exactly? Quote it for me. His exact words in his deposition testimony were that he explained his situation and his situation. Wait, wait, wait, wait, wait. He explained his situation? Yes. That was the deposition testimony. What does the, what does, is the form lost? Yes, Your Honor. The two forms that he submitted are, for some reason, nowhere to be found. Okay. All right. I thought that was other documents. But, so he said, I put on the form my situation. Is that his testimony? I don't want to put words in your mouth. What exactly did he present sworn testimony about the contents of that form? He said that towards, he was originally wrongfully arrested on June 19th, 2014. He said towards the end of June that he submitted at least two grievance forms, one specifically addressed to Mrs. Robinson, that explained, and his quote was, that explained his situation, and then he referenced Gestapo-style tactics of being pulled off the street and held here without being presented in front of a court, ever. He testified that Mrs. Robinson's name on the form, because that was the name that was in the manual that was provided for the inmates when they, when they had the intake. Correct. That is how he knew. He knew to provide her name. Yes. That's correct, Judge. All right, so he testified in the deposition, when we read it, that, that he put on the He not only had been arrested in Gestapo-like tactics, falsely arrested, but he had not had a hearing. His exact words, and I don't want to improperly recite the record, Judge, but his exact words were that he explained his situation. And later in the deposition testimony, it's cleared, and the district court notes in a footnote that his situation was that he'd been there for at least at that point in time, a couple of weeks, since he was arrested June 19th, and it was towards the end of June that he was trying to get these forms submitted, and he actually got these forms. He said it was the end of June that he explained his situation and that his situation was that he'd been there for a couple of weeks and had not been in front of a court. Now he did state- So your position, your position depends on his deposition testimony in this situation being interpreted to mean not only that he was falsely arrested, but that he had not had an initial appearance. In addition to his deposition testimony that multiple times, multiple times, asked multiple officers and many people throughout the iteration, not just towards the end of June, that he didn't know why he's here, when is he going in front of a judge, his deposition testimony also stated that he spoke to many correctional officers about that, and that he asked for multiple times, that there were never grievance forms in the box as required by the policy that was supposed to be implemented, and had it been implemented and followed correctly. I'm trying to focus, because if it's there, it's the strongest part of your case. If it's not, I can understand why I'm having such difficulty finding out what exactly says. The things he spoke to other officers about, did he say, I haven't had a hearing, I haven't been to court. Is that his testimony? He testified, yes, that he had spoken to multiple officers and multiple people stating, why am I here, when am I going before a judge, why haven't I received a bond hearing? But he never testified that he had spoken to either of these two specific defendants. I'm sorry, repeat that. He never testified that he had spoken to either Robinson or Palmer, correct? That's correct. Not directly, not in person. Well, what evidence do you have, for example, that Ms. Palmer knew anything about this plaintiff, and knew anything about him not having been before a judge on an initial appearance? Directly from Mrs. Palmer? From anybody, from anybody. Well, their job description and job duties are to- That's it? That's it? That they should have known everything that anybody inside the detention center said? No, that's not the only basis for that, no, Judge, not at all. You're asking us to find, for example, that Ms. Palmer violated the constitutional rights of somebody in her country, which is a serious charge, and that she was deliberately indifferent to their rights. And I'm just asking you, what evidence is there in the record that she knew anything about this plaintiff, and knew anything about this plaintiff having not been given a hearing? The testimony of my client stating that he submitted at least two forms that were nowhere to be found, and then there was a third form that was located. I thought what you told me before was that he submitted those with Ms. Robinson's name on them. One of those forms he was certain had Ms. Robinson's name on it. The other form he was unsure of, if he directed it to anybody. He did not know- There's no evidence, Ms. Palmer, knew about either one of those forms. Well, the deposition testimony is evidence that she would have received those forms had she, had those forms been submitted, which our client testified that he did submit those forms. And then the statement of counsel in court was, and based on their own policies and procedures, if there was an emergency grievance filed, and this would be considered and categorized as an emergency grievance, then it would have gone directly to them. And frankly, the testimony also states that it would have just picking up the phone to call the clerk's office. It was as simple as picking up a phone. Okay, Ms. Agricola, we've- But Ms. Palmer couldn't be expected to pick up the phone if she never saw the form. But you're assuming a fact that's not in evidence. You're assuming that she didn't- No, you're assuming a fact that's not in evidence. What counsel said was it would have gone to Mrs. Robinson or at least Ms. Palmer. But that doesn't mean it went to Ms. Palmer. It does not mean that it did not go to Ms. Palmer. Respectfully- Yes, and who's got the burden, counsel, who's got the burden of proof here? The burden is on the party moving for summary judgment and the facts are viewed in the light most favorable to the non-moving party in this case, that would be the plaintiff. I know, but you don't have- I understand your argument. And let me tell you what, there is something to their position that you don't just sue everybody and let the courts sort it out. You treat Robinson and Palmer in your brief as though they're alter egos of the same person. That's fine, but if you falsely accuse somebody of violating a constitutional right based on the fact that either she or somebody else did it, that's difficult. I certainly understand. I'm taking up all of your time. I'm going to take it. Okay, Ms. Agricola, we've taken you way beyond your time, but thank you very much and we'll hear from Mr. Agricola now. You've got your full 10 minutes available to you. Thank you, Your Honors, and if I may, I'd like to take a point of personal privilege to say how proud I am to be serving as co-counsel to my daughter in this case, which is her first opportunity to appear before this court after having served as law clerk to this court for then Chief Judge Joel Dubina. It just doesn't get any better than this. You're probably right about that. The district court correctly denied summary judgment in the face of defendant's claim of qualified immunity for two reasons. First, the district court correctly found that the plaintiff alleged the violation of a constitutional right that was clearly established at the time. Second, the district court properly assessed the evidence viewed in the light most favorable to the plaintiff as sufficient such that a reasonable jury could conclude that defendant's conduct violated plaintiff's constitutional rights. In count one of the plaintiff's amended complaint, the plaintiff asserted the following constitutional claim. All defendants deprived Murdoch of his constitutionally protected rights under the Fourth, Fifth, and Fourteenth Amendments, including the right to be free from unreasonable searches and seizures and the right not to be deprived of liberty or property without due process. The district court concluded that prior precedent from the Supreme Court and from this court established that a pretrial detainee had a clearly established right to be free from false imprisonment without due process even where no prior precedent had held that the jail official's specific conduct gave rise to Section 1983 liability. Can we, let's for a moment at least, let's shift away from whether or not there was sufficient evidence of a constitutional violation and turn to the circumstances surrounding Ms. Robinson and Ms. Palmer. What were the theories of liability in the complaint against them? You can start with count one if you want. Well, count one charged all defendants. Okay, fine. What did they do wrong? Well, first of all, the evidence was that there were policies of the jail in place that allowed the grievance form to be escalated to the highest level capable of resolving the complaint. And an emergency is defined as one that poses a serious risk of harm to the inmate. So we know that the harm here is great because we're violating an inmate's constitutional rights to be presented to a judge within 72 hours where he would be informed of numerous, a plethora of constitutional rights to which he was entitled. So we never got any of that, okay? So that escalates this grievance to the top. He says he filed a can't be found? Which are required to be presumed correct on summary judgment because there is a factual dispute about whether those forms were submitted. And it's incredible to me that opposing counsel would say this is not central to the case. It is clearly central. Whether those forms were submitted was important. It was the crux of the case. The way she said that, I think, is by suggesting that it wasn't central given the way that you pled the case and pursued the case against Ms. Robinson and Ms. Palmer. In her view, and I don't know if it's right or not, in her view, the theories under which you were traveling for those two defendants made those grievant forms not all that important. I'm summarizing. Well, there's no question that Mr. Murdoch had no obligation to do anything to make sure that the defendants did what they were supposed to do. Yes, but if he did nothing, if he did nothing, then you'd have to figure out who was responsible for not taking him to a judge. And it can't be that you can sue everybody. For example, this is a very easy question, but it's only asked to make a point. He can't sue the custodian who cleans the floors at night for not having taken him to a judicial officer, right, even though that person is a jail employee. You agree with that? Yes, sir. Okay, so the question becomes, if Mr. Murdoch had no burden to do anything to trigger his right to go before an officer, who's constitutionally responsible for getting him there? That's the question we're all trying to figure out through the summary judgment lens.  Sure. The relevance of what Mr. Murdoch did goes to the issue of deliberate indifference. Sure. It was the defendant's obligation to make certain that Mr. Murdoch got what he was entitled to under the law. And we cited in paragraphs 21 through 25 of the amended complaint the rules of criminal procedure which each required his delivery before a judge and when, and what he would be informed of when he was delivered before a judge. Now those rules of criminal procedure were there to require the defendants to do what the law required, and they didn't do it. So the fact of the matter is that Mr. Murdoch's statements in his deposition about what he did are sufficient under the law to form a basis for a conclusion that there's a genuine issue of material fact that justifies denial of summary judgment. Because the rule, because the jail's rules say that that sort of a grievance would have gone to Ms. Robinson and or Ms. Palmer? Not only that, yes, I agree, that is one factor, but also defense counsel's admission and oral argument that if he had submitted a grievance form that said that he had been denied a judicial hearing at any point, that would have gone to the director or at least the assistant director. And you can tell me if I'm wrong, but my understanding of reading the deposition of Ms. Palmer, Ms. Robinson is, I think particularly Ms. Robinson, is that when they had the grievance forms, there were different grievance forms. So like, let's say if you said, I didn't get the kosher meal that I wanted. That went to a particular person. So maybe they wouldn't have dealt with that. But I think even her own testimony was like, if it was something like that, she would have seen it. That was something that would have gone to her as opposed to, you know, something where it would have gone to another person, like the example, the kosher meal or something like that. But something that relevant or that important would have gone to her or Ms. Palmer. Yes, Your Honor. That was a serious risk of harm to the plaintiff. The fact that he was denied his constitutional rights would have elevated this grievance all the way to the top. And they would have acted on it. And they said all they had to do to correct this problem was pick up the phone and call the circuit clerk's office. So, you know, that's the basis upon which the Court below found that, you know, a reasonable jury could find from these facts, given the presumptions at this stage of the proceedings, that the defendants knew about his denial, that they failed to take action to correct it, and they acted with deliberate indifference at a level that shocks the conscience. It's not what the jury would find. It's what a reasonable jury could find based on evidence at this stage of the proceedings. Now, that's not to say a trial jury might find this differently. Counsel, wasn't, I thought that the Montgomery County, at least, circuit clerk's office was notified of the arrest in the detention order before, within days after his arrest. Am I wrong about that? I believe the record is, Your Honor, that they were notified on June 20th, the next day after he was arrested. Yeah. So, the court, the circuit court and the clerk's office in the circuit court knew that he had been arrested and detained. And I imagine they were a lot more familiar with Alabama rules and criminal procedure than the executive director, the director and assistant director of the detention center was. So, they knew that he was entitled to a first appearance, initial appearance, and they didn't grant him one, did they? Well, he never got one. There's no question about that. So, they didn't grant him one. My question is, why didn't you sue the Montgomery County circuit clerk's office? Well, the circuit clerk's office is an arm of the court, and as such, they're entitled to absolute judicial immunity. They're also at fault here, aren't they? I mean, if they had looked at that document that they indisputably got, he would have gotten a first appearance, initial appearance, wouldn't he? Well, sure, but we don't know precisely where the breakdown was. But here's the fact, Judge. Well, we know, no, no, counsel. We know it was out, that part of the breakdown, at least that breakdown was outside the detention center because they got a copy of the papers within 24 hours after his arrest. And they did, the circuit clerk and the circuit court, one or both, sue them both together, or at least you can talk about the fault both together. They're responsible for him not getting a hearing. Well. 46 days before he got one. The fact of the matter, Judge, is that the defendants had the plaintiff. They had him in their jail. They knew. So they should have just taken him over there and dropped him off in the circuit clerk's office. But my point is the circuit clerk dropped the ball, did they not? We don't know. Or the circuit judge. We don't know. But you know it was dropped. We don't know if it was in the circuit clerk's office or the circuit judge's office. We don't know where the ball was dropped. There's no testimony in the record about where precisely the ball was fumbled or on what yard line. There's no evidence. But we do know that the plaintiff was in the jail and the defendants ran the jail and the defendants were trained in the rules of criminal procedure. Your case, your case would be, well, I speak only for myself. Your case would be factually stronger if you had sued the corrections officers that he personally spoke to who refused to give him the grievance forms after he complained that he hadn't seen a judge. We would say that those would be additional pockets that we could have tapped. But not the only ones. I'm not saying only ones. I'm just saying things are a little more difficult for a plaintiff as they go up the chain of command. If you had sued, and I'm not saying you had to, but if you had sued a corrections officer that Mr. Murdoch saw on day seven and said, I haven't seen a judicial officer. I need to see one. Something has gone wrong. Please give me a grievance form so that I can ask to be taken to court. And that officer sort of laughed it off and didn't give him a grievance form. That would be basically a slam dunk. But as you go up the chain, it becomes a little harder to establish knowledge, deliberate indifference, et cetera, et cetera. That's correct, Your Honor. Okay, Mr. Agricola, thank you very much. Thank you, Your Honor. Can I ask you something before you sit down, please? Sure. You were supposed to be, well, you had planned to argue qualified immunity, so I feel comfortable asking you this. Wes V. Tillman, on the subjective knowledge part, one defendant who had been working as a records specialist only a few weeks kind of said she gets qualified immunity because she may not have known any better. But as for another defendant, the plaintiffs had not offered any testimony to rebut her evidence that the indifference in that case was an oversight, not indifference, and was human error caused by heavy workload. We said that was a basis for qualified immunity. So, if in this case it was an oversight and human error, you haven't made out a clearly established law violation, tell us how you have. Well, I don't think anybody argues that detaining an arrestee for 48 days without appearing before a judge is not clearly established law. I don't think anybody seriously contends that that's not clearly established. I think there is a serious contention that if it's through negligence or human error as opposed to something for which subjective knowledge can be found, you may have problems on qualified immunity. I understand that the law requires subjective knowledge on the part of the defendants that they were aware of the denial of his constitutional rights and failed to take any action to correct it. The district court found, and we agree, that at this stage of the proceedings, the evidence was sufficient to allow a reasonable jury to conclude that they were aware of it, that they failed to take any action that they should have taken to correct it, which would have been minimal to simply pick up the phone and call the clerk's office, and that that was more than mere negligence and was deliberate indifference at a level that shocks the conscience. Okay. I think that's a pretty good answer. Thank you. Thank you, Your Honor. Thank you very much. Thank you, Your Honor. May it please the Court. Thank you for your patience. I'll be real quick. I want to say, to enlighten the Court and set the record straight, what these forms said according to Mr. Murdoch. He filed an inmate request form. He thinks he put Ms. Robinson's name on there. Not sure, but he thinks. He filed it at the end of June, and I said, what did it say? I said what my situation was and that I needed to talk to somebody. That's what he said. Then he filed a grievance July 14th. What was his situation? We don't know. That's all he said. But he, you know, he's, I mean, honestly, come on. I mean, I've read this record, okay? There's an affidavit from Mr. Elder, who's an officer, a corrections officer, and he said that Mr. Murdoch told him that he was wrongfully detained, that the warrant was and that was in June or July of 2014. So I mean, honestly, you say that you have sympathy for the man, but the way you speak to this Court, obviously you don't, because clearly he's not telling, he didn't tell Mr. Elder. He said, I told everybody I could what my situation was, and his situation was that he was being wrongfully detained in a county jail, and he sat there for 48 days. I do have sympathy for him. I'm just trying to set the record straight about what the form said. That's all my point is to do, okay? Should we read the form that he wrote to the Court? Because in that form, he said specifically what his situation was. All right, but I'm just trying to set the record straight. No, but here's where I think you're getting some of the frustration on this side. A person who is in jail for more than six weeks, a little bit less by the time he submitted these grievance forms, his situation is not going before a judge, at least looking at the facts, and I understand your other arguments about the concession, which shouldn't have been accepted because it's contrary to the record, and I understand the separate argument about them shifting theories. We're going to look at all of that when we undertake a review of the record, but in terms of construing the grievance that he said he filed, if you're applying the summary judgment standard in the light most favorable to the non-moving party, when he says my situation, isn't it a reasonable inference that his situation is being detained without being taken to court? Of course. I'm just, my point, and I apologize for irritating the Court. My point was just to tell you, and because Judge Carnes had asked about it, exactly what he testified about the forms. That's all I'm trying to do right now. No, we appreciate that. And I do have sympathy for him. I don't want you to think I don't. You're doing your job. You're representing your clients in the most zealous way that you can. We understand that. We would expect nothing less. But it is a challenge to construe the evidence in the light most favorable to Mr. Murdoch, draw reasonable inferences in his favor, and yet think that neither Ms. Robinson nor Ms. Palmer are completely ignorant about Mr. Murdoch's situation. Maybe a deep dive into the record will show exactly that, and you may be ultimately right about that. But looking at it from a perspective where you've seen pieces of the record, and you've read the briefs, and you've read the complaint, and all of that, it's like, I'm not quite sure about that. Quite not sure about what? About Ms. Robinson and Ms. Palmer being completely ignorant about Mr. Murdoch's situation. Okay. Again, at the summary judgment stage, viewing the evidence in the light most favorable to him, not to them. Well, we know that they testify they did not see a grievance or an inmate request form. We don't have those forms in the record, so we don't know what they said. What we do know is that Ms. Robinson testified that either one of these forms, they're picked up by the grievance clerk, they're taken to booking, and they are handled by whatever they say. For instance, if it's about the kitchen, they deal with that. And she testified, if someone had said they're not getting their hearing or they had a question about their hearing, it does not necessarily go to her or to Ms. Robinson. It's handled in booking by clerical, sergeant, or lieutenant, by picking up the phone and finding about the hearing, getting a hearing date, writing on a form, and have the grievance clerk take it back to the inmate in the jail. That makes perfect sense. If you're thinking about someone who has been held maybe four or five days and they've missed their court date by a couple of days, and you would expect lower-level staff to take care of those, like, oh my God, we missed a court run yesterday, or somebody at the ball, and we should have had them there on Monday, we're going to have to get them there on Wednesday. That makes perfect sense. But once you start talking about a delay of more than a month, you would think that those sorts of grievances get escalated because holding somebody for an extra day or two is not the same thing as holding somebody for more than a month before being taken to see a judge. I see your point. I do. I'm just telling you what the record says and what she testified to, and neither one of them said they saw it. And I asked the court to please look at the West v. Tillman case that was mentioned by Judge Carnes. Wait, wait, wait. I just want to make sure there's not another case that I've missed. You said U.S. v. Tillman. It's Tillman v. West, right? West v. Tillman. Right. Okay. Okay. In that case, the court held that the defendant, the particular defendant who did not follow up on a grievance was at most negligent. And that's what we've asked this court to look at because I think that's controlling here. That would be the guidepost when you're looking at clearly established law. Assuming there is a constitutional violation by my clients, then you go to the next step, as you know, which is clearly established law. And we have Tillman v. West, or I guess it's Tillman v. West. And I've asked, I asked the court to look at that because it was not held to be deliberate indifference. It was held to be negligence. There wasn't enough evidence. Just like this case. How do you, how do you play that case off with canon? Canon. In canon. Which was a detention of, I think, eight days, seven days, something like that? It was seven days. And if my memory serves me correctly, that case concerned complaints directly made to an individual protesting a misidentification. That was a misidentification. It was, yes. And they had the, in my, this is what I say, they had the correct defendant before the court because he actually admitted, yes, I'm the one that he complained to. We don't have that here. We have the corrections officers that Mr. Murdoch complained to aren't defendants. He sued the supervisors. And this is an important point I want to make before I sit down. The complaint in this case that we are looking at does not mention grievance or inmate request form or Robinson or Palmer not responding to a grievance or inmate request form. It strictly says they're responsible because those jailers did not help him. Then we have the order that changes that now to them being responsible for not responding. But to play devil's advocate, if a complaint which lacks specificity is not challenged and continues forward, the specificity gets developed at summary judgment. True, but there's more. During the discovery process, we issued written discovery to Mr. Murdoch. What are you claiming Ms. Murdoch and Ms. Robinson did wrong? And his answer is, see the complaint. Then I took his deposition. I said, what are you claiming they did wrong? And you know what he said? Policymaking. And as a matter of fact, I have right here the last question in his deposition was asked by his own lawyer. And it said, what are you claiming that they did wrong? And he says, the failure to make policies that ensure the smooth running of the jail. That's what he said in deposition. That's what he said in his interrogatory responses. I have the complaint. I relied on that, which I think I was right to do so, and filed my summary judgment. And then we get to the hearing and things change. Count one is now based upon an inmate's grievance and a request for never mentioned in the complaint. And count four, which was a supervisory claim based upon the failure to implement policies, has now become a supervisory claim based upon the supervisor's personal participation in the constitutional violation. And I've cited to the Court, and I ask you to please look at Dukes v. Deaton, or maybe it's Deaton v. Murdoch. You're way beyond your time, and I wanted to let you finish up and wrap up, but we understand your position. That's all I want to say. And again, thank you for your time. All right. Thank you all very much. All right. We're in recess for today.